IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL J. COOK, M18612, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:14-cv-00120-RJD |
| | ) |
| DR. L. OVERALL, | ) |
| DR. HENDERSON, | ) |
| DR. NEWBOLD and | ) |
| UNKNOWN PARTY, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

    This is a prisoner civil rights lawsuit involving dental care. Plaintiff Michael Cook is an inmate within the Illinois Department of Corrections ("IDOC") prison system and the incidents that give rise to this litigation occurred at Menard Correctional Center ("Menard"). Cook asserts that in 2011 through 2013 the Defendants provided him with inadequate treatment for his incoming wisdom teeth. Defendant Dr. Henderson is a dentist employed by IDOC. Defendants Dr. Overall and Dr. Newbold are dentists employed by Wexford Health Sources, Inc. ("Wexford"). Wexford is a contractor that provides healthcare services to IDOC inmates. Cook initially filed suit *pro se* but he has since been recruited counsel. All three Defendants now seek summary judgment. (Docs. 57 and 59). The motions are opposed. (Docs. 61 and 62). The Wexford Defendants also filed a reply (Doc. 63) to Cook's response in opposition. For the following reasons, the motions for summary judgment are hereby granted.

1

I.     BACKGROUND

When presented with a motion for summary judgment, all factual disputes and reasonable inferences are to be drawn in favor of the nonmoving party (i.e., Cook). *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). With that standard in mind, we turn to the facts of the case. Cook was born in 1990 and he entered IDOC custody in early 2011.[1] (Cook Deposition, Doc. 58-1, p. 5). Shortly thereafter he was placed at Menard. (Doc. 58-1, p. 6). Sometime around May or June of 2011, Cook's bottom left wisdom tooth started to come in. (Doc. 58-1, p. 8). As a result, he began to experience pain and discomfort. *Id*. Cook submitted request slips to be seen at the prison Health Care Unit ("HCU"), and on June 22, 2011 he was examined by Dr. Overall, a dentist at Menard. (Doc. 58-1, p. 10).[2] Cook told Dr. Overall that his tooth was causing him pain, headaches and that he thought it should be pulled. (Doc. 58-1, p. 13) . Dr. Overall observed Cook's teeth and told him that his wisdom tooth was cutting through the gum. (Doc. 58-1, p. 14).[3] Dr. Overall provided Cook with some pain medication and antibiotics and told him to gargle with salt water. *Id*. She also told Cook to submit another request slip if he would like to have the tooth pulled. *Id*. Cook then left the HCU and had no further interaction with Dr. Overall.

Cook's next dental examination occurred 16 months later on October 25, 2012. (Doc. 58-1, p. 18). After submitting multiple request slips (Cook states in a grievance form that he submitted at least four or five, *see* Doc. 1-1, p. 73), Cook was examined by Dr. Henderson on this date. *Id*. Dr. Henderson's medical records from the examination note that Cook complained

---

[1] Cook is currently serving a 35 year sentence for first degree murder. He has a mandatory supervised release (parole) date of 2045. *See* Illinois Department of Corrections "Offender Search" website, https://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last accessed February 16, 2017).
[2] Cook stated at his deposition that he had never been to a dentist prior to his incarceration. (Doc. 58-1, p. 9).
[3] Cook stated at his deposition that his bottom left wisdom tooth was causing him pain, and that his bottom right wisdom tooth was never an issue. (Doc. 58-1, p. 10). Dr. Overall's medical notes from the June 22, 2011 examination state that the bottom *right* tooth was the problem tooth. (Doc. 58-2, p. 11).

2

that his gum was sore and that "I need my tooth out." (Doc. 58-2, p. 3). Dr. Henderson observed, "#17 [tooth] partially erupted … tissue red / swollen no drainage [.]" He diagnosed the tooth as "Pericornitic" [sic]. *Id*. Dr. Henderson notes under "P" (Plan) that he will "start referral for on site oral surgery #17." *Id*. He also issued Cook prescriptions for Amoxicillin and Motrin (ibuprofen). *Id*. On November 6, 2012 Dr. Newbold examined Cook.[4] (Doc. 58-1, p. 19). Cook explained the tooth problems he was having to Dr. Newbold, and Dr. Newbold told Cook that he was going to refer him to an oral surgeon. (Doc. 58-1, p. 21). On November 9, 2012 "Pan Oral X-rays" were taken. (Doc. 58-2, p. 3). There was no further dental treatment until the following year.

Wexford approved the oral surgeon referral and on January 9, 2013 the oral surgeon, Dr. Craig, performed an "operculectomy." (Doc. 58-4, p. 2). Dr. Newbold states in an affidavit attached to his motion for summary judgment:

> An operculectomy is a procedure wherein local anesthesia is applied and a split is placed in the gum over an emerging tooth to assist the tooth in emerging. Dr. Craig wrote orders for Motrin and Penicillin at the conclusion of the procedure. It is customary to wait some period of time after the performance of an operculectomy to watch the emerging tooth come in and see if it going to cause problems. Operculectomy procedures are often performed before resorting to tooth extraction as wisdom tooth extraction can cause damage to the nerves that control movement and sensation in the lips.

*Id*. Following the procedure, Dr. Craig provided Cook with some antibiotics and painkillers. (Doc. 58-1, p. 23).

---

[4] Dr. Newbold states in an affidavit attached to his motion for summary judgment that he never personally examined Cook nor spoke to him directly. (Doc. 58-4, p. 2). Cook stated in his complaint and deposition that he was examined by Dr. Newbold on November 6, 2012. (Doc. 1, p. 18 and Doc. 58-1, p. 21).

The operculectomy was not as successful as they had hoped, and Cook continued to experience pain and discomfort from the tooth. Cook was later scheduled for a follow up appointment with Dr. Henderson on March 14, 2013. (Doc. 58-1, p. 24). Due to the prison being on lockdown, the examination was delayed until March 18. *Id*. At the examination Cook told Dr. Henderson that he was still experiencing problems with the wisdom tooth and that he was in a great deal of pain. (Doc. 58-1, p. 25). Dr. Henderson provided him with more medication (antibiotics and painkillers), and made another request to have Cook seen by an oral surgeon. *Id*.

Wexford approved the referral (*see* Doc. 58-2, p. 8), and on April 4, 2013, Cook's wisdom tooth was pulled by Dr. Swanson, an off-site oral surgeon. (Doc. 58-2, p. 9). Cook returned to Menard and later that day he underwent a follow up examination by Dr. Henderson. (Doc. 58-2, p. 5). Dr. Henderson's notes state; "4/4/13 [at] 2:30 PM[.] Exam – Pt. returned from Dr. Swanson's office. Had #17 removed. Pt. doing well (still numb) – Rx Motrin 200mg x 48 [and] Amoxicillin 500mg x 30[.] Eval 1 wk." *Id*. On April 11, 2013 Dr. Henderson removed a suture from the site of the (now pulled) wisdom tooth. *Id.* Dr. Henderson also noted that Cook was "healing W.N.L." (within normal limits) and "doing well." *Id*.

Defendants Dr. Overall and Dr. Newbold submitted affidavits with their motion for summary judgment. Dr. Overall states in her affidavit that she only provided dental services to Cook on June 22, 2011. (Doc. 58-3, p. 2). At the examination Cook complained of pain from an incoming wisdom tooth. *Id*. Dr. Overall states that Cook actually complained of pain in his lower right wisdom tooth, and not the lower left. *Id*. At the conclusion of the examination she prescribed Motrin and Penicillin, and told Cook to "contact the dental department again if his problems persisted." *Id*. She also states in her affidavit:

4

> Emerging wisdom teeth can cause some pain and discomfort, though it can usually be managed with over-the-counter pain medications and antibiotics. Wisdom teeth do not "automatically" need to be extracted as, after they have fully emerged, many cause no problems whatsoever. It is customary to observe the emerging tooth and look for problems. Wisdom teeth are generally only extracted if they are, in fact, causing problems. There is no need to extract them if they are not causing problems.

(Doc. 58-3, pp. 2-3). Finally, Dr. Overall notes that, "[a]fter the June 22, 2011 examination, Mr. Cook had no contact with the Dental Department for more than 16 months." (Doc. 58-3, p. 2).

Dr. Newbold states in his affidavit that he has been the chief dentist at Menard since March 1, 2012. (Doc. 58-4, p. 1). Dr. Newbold disputes Cook's deposition testimony and states that he "never personally examined Cook nor spoke directly with him." *Id*. Dr. Newbold also states in his affidavit that he processed the paperwork for Cook to be referred to the oral surgeons. (Doc. 58-4, p. 2). Wexford utilizes a "collegial review" process where individual healthcare practitioners must receive corporate approval before sending inmates to see specialists, have surgeries performed, etc. *Id*. Both of Cook's oral surgeon visits went through the collegial review approval process. *Id*. Dr. Newbold notes that after "responding to one of Mr. Cook's grievances on May 28, 2013, I had no additional contact with Mr. Cook nor any knowledge or information about his dental condition." *Id*.

In late 2012 and early 2013, Cook filed multiple prison grievances complaining of the dental care he received. (*see* Doc. 1).[5] Cook then filed suit on February 3, 2014. (Doc. 1). The Defendants now seek summary judgment.

---

[5] Cook states in one document attached to his complaint that he began to file grievances on November 15, 2012. (Doc. 1-1, p. 43).

## II. ANALYSIS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Stated differently, a party is entitled to summary judgment if no reasonable jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However the Court shall not usurp the jury's fact finding role. At the summary judgment stage, the evidence must be construed in the light most favorable to nonmoving party, and all reasonable inferences are to be drawn in his favor. *Leaver v. Shortess*, 844 F.3d 665, 668 (7th Cir. 2016). Then, "[i]f the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact." *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). In sum, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The purpose of Rule 56 summary judgment is to "prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2712 (4th ed.).

Cook asserts in this lawsuit that the Defendants violated his Eighth Amendment rights by failing to provide him with proper dental care. Although prisoners' constitutional rights are limited compared to individuals not incarcerated, they do have a right under the Eighth Amendment to "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). If a prisoner in state custody has

been deprived of the "minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), the prisoner may file suit and seek damages pursuant to 42 U.S.C. § 1983.[6]

To prevail on an Eighth Amendment claim, the prisoner plaintiff must establish that (1) they suffered from an objectively serious deprivation (for claims alleging denial of medical treatment, this would be an objectively serious medical condition) and (2) that the defendants were deliberately indifferent to it. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

As for the first element, an objectively serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The Seventh Circuit has held that "a broad range" of medical conditions may qualify as objectively serious, including "a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit." *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011). Dental problems may also qualify as "objectively serious" conditions and the Seventh Circuit has observed that "dental care is one of the most important medical needs of inmates." *Bd. v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (quoting *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)).

In addition to demonstrating an objectively serious medical condition, the plaintiff must also establish that the individual defendants were deliberately indifferent to it. As with all § 1983 claims seeking damages for past harm, the plaintiff must show that the defendants were personally involved in the constitutional deprivation. *Palmer v. Marion Cty.*, 327 F.3d 588, 594

---

[6] Prisoners in federal custody alleging Eighth Amendment violations may seek damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

7

(7th Cir. 2003).[7] "Although direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Id*. Additionally, it must be noted that an Eighth Amendment deliberate indifference to medical needs claim is *not* a negligence action. "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Deliberate indifference is a higher level of culpability akin to "criminal recklessness." *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016). This is a standard above ordinary negligence but less than purposeful. *Farmer v. Brennan*, 511 U.S. 825, 843, 114 S. Ct. 1970, 1982, 128 L. Ed. 2d 811 (1994).

Moreover, a prisoner does not need to show that he was "literally ignored" to assert a deliberate indifference to medical needs claim. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). "The question … is whether the official knew of and disregarded an excessive risk to the inmate's health, not whether the inmate was ignored." *Id*. at 612. A prisoner that receives some treatment may still pursue an Eighth Amendment claim if the plaintiff can demonstrate that the care received was "blatantly inappropriate." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). But the Seventh Circuit observed in a recent *en banc* opinion that it can be difficult to determine (and prove) whether "a doctor did not just slip up [i.e., was merely negligent], but was aware of, and disregarded, a substantial risk of harm[.]" *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The Court in *Petties* stated that a plaintiff may use various types of circumstantial evidence to prove that a defendant health care professional acted with deliberate indifference, including: a decision to completely ignore plaintiff's request for treatment, a doctor's refusal to

---

[7] An individual may also seek damages due to an unconstitutional policy or custom implemented by a local government unit, *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978), or government contractor. *See, e.g., Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

8

take instructions from a specialist; a decision to pursue a course of treatment known to be ineffective (or treatment that is easier and less effective); and unexplained delays that serve no penological purpose. *Id.* at 729-731. However, a delay in receiving medical treatment, by itself, will be insufficient to establish an Eighth Amendment violation. The prisoner plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Id*. at 731. Finally, Courts must look at the "totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Id*. at 728.

     Here, the Defendants do not dispute that Cook's dental condition was objectively serious, but they do argue that they were not deliberately indifferent to it. The Court agrees. Cook's first interaction with any of the Defendants occurred on June 22, 2011 when he was examined by Dr. Overall. Cook told Dr. Overall that he was having a problem with one of his wisdom teeth and that he wanted it pulled. Dr. Overall decided against having it pulled at that time, but she provided Cook with painkillers, antibiotics and some salt to gargle with. Dr. Overall notes in her affidavit that "[e]merging wisdom teeth can cause some pain and discomfort;" they "do not automatically need to be extracted;" and it is "customary to observe the emerging tooth and look for problems." Cook does not dispute these assertions.  Over the course of the single visit, there is nothing to suggest that Dr. Overall's treatment rose to the level of deliberate indifference, or even negligence. After this visit, she never saw him again.  As such, no reasonable jury could find that Dr. Overall was deliberately indifferent to Cook's condition. Dr. Overall is therefore entitled to summary judgment.

     After the June 22, 2011 visit with Dr. Overall, Cook's next dental exam occurred on October 25, 2012 with Dr. Henderson. The record is not very clear as to what happened during

9

this 16 month period. Cook stated at his deposition that Dr. Overall's medications provided some temporary relief but the wisdom tooth problems persisted. He also stated that he was able to obtain some over- the-counter type pain medication to dull the pain. (Doc. 58-1, p. 18). However, Cook has not provided any evidence that shows that Dr. Henderson or Dr. Newbold was aware the wisdom tooth was still causing him problems. Therefore, the two cannot be subject to Eighth Amendment liability during this period.

The question thus becomes whether Dr. Henderson or Dr. Newbold were deliberately indifferent to Cook during the period between October 25, 2012 and April 4, 2013. At the October 25, 2012 examination, Dr. Henderson observed Cook's tooth, prescribed painkillers, antibiotics and a salt gargle and began the "collegial review" process to have an oral surgeon operate. (Doc. 58-2, p. 3). Less than two weeks later on November 6, 2012, Wexford approved the oral surgeon procedure. Cook also stated at his deposition that he spoke to Dr. Newbold on this date, but Dr. Newbold states this conversation never occurred. Assuming that this discussion did take place, this was the only time that the two directly interacted. Approximately two months after this interaction, on January 9, 2013, Dr. Craig performed the operculectomy. Dr. Craig's medical notes state that following the procedure, Cook received more painkillers. The operculectomy unfortunately did not correct the problem, and (following a delay due to the prison being on lockdown) Cook went to see Dr. Henderson on March 18, 2013. Dr. Henderson referred Cook back to the oral surgeon, and the tooth was finally removed on April 4, 2013.

Although this course of treatment was not as speedy as Cook would have liked, he did receive a great deal of dental care.[8] He was consistently prescribed painkillers, antibiotics and

---

[8] Judges are generally loath to conduct their own independent research when deciding matters before them. However the practice has gained a degree of acceptance by the Seventh Circuit, or at least when presented with prisoners' Eighth Amendment claims that involve medical questions of a technical nature. *See Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015). With that said, the "wait and see" approach for deciding when to remove wisdom teeth appears

the salt water gargle. After the operculectomy was determined to be unsuccessful, the Defendants opted to have the tooth pulled. It should be noted that Cook did experience some delays as he waited to be treated by the oral surgeons and he was only provided with weaker, over-the-counter type painkillers. But the Seventh Circuit remarked in *Snipes v. DeTella*:

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

95 F.3d 586, 592 (7th Cir. 1996) (internal quote omitted). Here, Cook has not provided evidence that the Defendants' conduct was so far askew as to support a finding of deliberate indifference. The Defendants Dr. Henderson and Dr. Newbold are therefore entitled to summary judgment.

One last issue bears mentioning; Dr. Overall and Dr. Newbold both argue in their motion for summary judgment that they should be entitled to qualified immunity. Under existing case law, they clearly are not. Prison correctional officers employed by private corporations are not entitled to qualified immunity, *Richardson v. McKnight*, 521 U.S. 399, 412, 117 S. Ct. 2100, 2108, 138 L. Ed. 2d 540 (1997), nor are prison healthcare contractors. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 794 (7th Cir. 2014) ("private prison employees are barred from asserting qualified immunity from suit under § 1983"). Dr. Overall and Dr. Newbold cite to *Williams v. O'Leary*, 55 F.3d 320 (7th Cir. 1995), and *Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397 (7th Cir. 1993), in support of their argument for qualified immunity, however it is doubtful that

---

to be gaining broader acceptance. *See* Dentists debate need to extract wisdom teeth, Los Angeles Times (Jan. 2, 2015), http://www.latimes.com/health/la-he-wisdom-teeth-20150103-story.html, Wisdom of Having That Tooth Removed, New York Times (Sept. 5, 2011) http://www.nytimes.com/2011/09/06/health/06consumer.html and The Prophylactic Extraction of Third Molars: A Public Health Hazard, Am J Public Health (Sept. 2007), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1963310/ (all articles accessed on February 16, 2017).

these cases are still good law in light of the Supreme Court's holding in *Richardson v. McKnight*. Pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, attorneys are free to present "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The Defendants may have a strong argument for doing so (*Richardson* was a 5-4 decision by the Supreme Court). However they should be clear that that is the argument they are presenting. Presently, qualified immunity is inapplicable to the Defendants under these circumstances.

### III.     CONCLUSION

The Defendants' motions for summary judgment are hereby GRANTED.  The "Unknown Party" is hereby terminated.  The Court Clerk is directed to enter judgment in favor of Defendants Dr. Henderson, Dr. Overall and Dr. Newbold and against Plaintiff Michael Cook. All other pending motions shall be terminated.

**IT IS SO ORDERED.**

**DATED:  March 2, 2017**

*s/Reona J. Daly*
**REONA J. DALY**
**UNITED STATES MAGISTRATE JUDGE**